**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| IN RE: ) | |
| ) | Case No. 06-10935 (BLS) |
| VII HOLDINGS COMPANY, ) | |
| ) | Chapter 7 |
| Debtor. ) | |

**MEMORANDUM OPINION[1]**

Before the Court is the request of Cambridge Properties, LLC ("Cambridge") and Southbridge Savings Bank ("Southbridge") (collectively, the "Non-Petitioning Creditors") for attorneys' fees and costs pursuant to 11 U.S.C. §§ 105(a) and 303(i) incurred in connection with the above-captioned involuntary bankruptcy case (the "Case"). The petitioning creditor, John Wilson, opposes the request, arguing that the Non-Petitioning Creditors lack standing to seek damages under section 303(i).

For the reasons stated below, the Court will deny the Non-Petitioning Creditors' request. In so ruling, the Court holds that: (1) the plain language of section 303(i)(1) limits the recovery of attorneys' fees and costs to a debtor; (2) although section 303(i)(2) does not, by its terms, limit the recovery of damages only to a debtor, the structure and scheme of section 303(i) yield this Court's conclusion that only a debtor may seek damages under section 303(i)(2); and (3) in light of this

---

[1] This Opinion constitutes the findings of facts and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

1

prohibition under section 303(i), the Court elects not to utilize its broad equitable powers under section 105(a) to achieve a result it deems inconsistent with the Bankruptcy Code's (the "Code") statutory scheme.

**BACKGROUND**

I. <u>The Events Leading to the Commencement of This Case</u>

The facts leading to the commencement of this Case and the January 12, 2007 hearing are extremely - and perhaps deliberately - convoluted, but center around a parcel of real property located at 27 Reynolds Road, Charlton, Massachusetts (the "Charlton Property"). On February 6, 2002, Jonathan C. Piehl, the owner of a one-half interest in the Charlton Property, was subject to an involuntary bankruptcy filing commenced by Linda S. Walker and Ara Eresian, Jr. in the United States Bankruptcy Court for the District of Massachusetts (the "Massachusetts Bankruptcy Court") (Case No. 02-40711). The filing of Mr. Piehl's involuntary case halted the pending foreclosure proceedings initiated in 2001 by Southbridge, the holder of a mortgage interest against the Charlton Property. Approximately five years later, Southbridge was granted relief from the automatic stay by the Massachusetts Bankruptcy Court Order dated May 16, 2006 [Docket No. 211] and scheduled a foreclosure sale for August 31, 2006.

One day prior to the scheduled foreclosure sale, Mr. Wilson commenced this Case by filing an involuntary chapter 7 petition

against VII Holdings Company (the "Debtor").  Despite the commencement of this Case, the scheduled foreclosure sale of the Charlton Property went forward and Cambridge emerged as the purchaser.  Following the foreclosure sale, Cambridge commenced an action, styled <u>Cambridge Properties, LLC v. Jonathan Piehl</u> (Case No. 06-SP-03531), in the Massachusetts Trial Court, Housing Court Department, Worcester Division (the "Massachusetts Housing Court") seeking to evict Mr. Piehl from the Charlton Property.  In opposition, Mr. Piehl has argued that the automatic stay, which arose upon the commencement of this Case, should have precluded the sale of the Charlton Property to Cambridge from going forward.

Although the factual story up to this point has been straightforward, it does not remain so when addressing the question of <u>how</u> the automatic stay, which arose in <u>this</u> Case, affects the Charlton Property.  The answer lies with Mr. Eresian, the owner of the remaining one-half interest in the Charlton Property, who has on several occasions attempted to thwart Southbridge's attempts at foreclosure.[2]  On February 24, 2006, shortly before Southbridge was granted relief from the automatic

---

[2] It appears that Mr. Eresian contested Southbridge's first attempt to foreclose upon the Charlton Property in 2001, filed the involuntary bankruptcy petition against Mr. Piehl in 2002, which halted a second foreclosure attempt, and objected to Southbridge's request for relief from the automatic stay in 2006 during Mr. Piehl's bankruptcy case.

stay, Mr. Eresian conveyed to Hobbs Abstract Company ("Hobbs") a mortgage against his one-half ownership interest in the Charlton Property. Seven months later, Hobbs assigned one-half of this interest to the Debtor. Thus, it was the Debtor's one-half mortgage interest in Mr. Eresian's one-half ownership interest in the Charlton Property that is alleged to have caused the automatic stay in this Case to prevent or void the foreclosure proceedings.

II. <u>Procedural History</u>

On December 22, 2006, Cambridge filed a motion to dismiss this Case [Docket No. 9]. On that same day, Southbridge filed a motion seeking relief from the automatic stay or, in the alternative, dismissal of the Case [Docket No. 10]. Both argued that Mr. Wilson's commencement of this Case was in bad faith, serving no purpose other than to frustrate Southbridge's foreclosure attempts. In support of their argument, the Non-Petitioning Creditors noted that Mr. Wilson and Mr. Eresian had a previous relationship. Moreover, they unearthed a remarkably similar involuntary bankruptcy proceeding filed by Mr. Wilson against the Debtor in Alabama, which frustrated the foreclosure sale of an unrelated parcel of real estate in which the Debtor acquired a mortgage interest from Mr. Eresian several days prior.

On or about January 12, 2007, Mr. Eresian filed written responses to Cambridge and Southbridge's motions [Docket Nos. 18

& 19].

    A hearing was held on January 12, 2007 at which time Mr. Wilson appeared, without counsel.  Mr Wilson responded to the argument of the Non-Petitioning Creditors, and was interrogated by the Court.  Although Mr. Wilson denied that the filing of this Case was an attempt to interfere with the Charlton Property foreclosure proceedings, Mr. Wilson acknowledged that he had a previous relationship with Mr. Eresian, was unable to offer credible testimony as to the development of his creditor relationship with the Debtor, and failed to explain any legitimate purpose for the commencement of this Case.  <u>See</u> Hr'g Tr. 11:19-17:18, Jan. 12, 2007.  Ultimately, this Court annulled the automatic stay <u>nunc</u> <u>pro</u> <u>tunc</u> to August 30, 2006 and dismissed the involuntary petition pursuant to sections 303(i), 305(a)(1), and 707(a) upon a finding that the involuntary petition was filed in bad faith and "for no other purpose than to improperly frustrate the efforts of Southbridge and Cambridge . . . ."  Hr'g Tr. 18:22-24.  This Court reserved jurisdiction to consider a request for attorneys' fees and costs to be filed by the Non-Petitioning Creditors.[3]

---

       [3]    On January 16, 2007, Mr. Wilson appealed this Court's dismissal order.  <u>See</u> Civil Action No. 07-73 (D. Del.).  However, that appeal does not divest this Court of its jurisdiction to determine whether the Non-Petitioning Creditors are entitled to attorneys' fees and costs.  Courts have held that, absent a stay pending appeal, they may retain jurisdiction "to decide issues and proceedings different from and collateral to those involved

On January 22, 2007, under Certification of Counsel, the Non-Petitioning Creditors sought an award against Mr. Wilson of approximately $27,000 in attorneys' fees and costs pursuant to sections 105(a) and 303(i).[4]  In opposition to this request, Mr.

---

in the appeal."  In re Board of Dirs. of Hopewell Int'l Ins. Ltd., 258 B.R. 580, 583 (Bankr. S.D.N.Y. 2001) (considering discovery issues despite a pending appeal of a court order sustaining the commencement of a section 304 proceeding); see also Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988) (upholding a court of appeal's decision that a judgment was final and appealable even though a request for fees under 28 U.S.C. § 1291 remained undecided, noting:  "As a general matter, at least, we think it indisputable that a claim for attorney's fees is not part of the merits of the action to which the fees pertain.  Such an award does not remedy the injury giving rise to the action . . . .").  They may also "enforce the order or judgment appealed . . . . 'because in implementing an appealed order, the court does not disrupt the appellate process so long as its decision remains intact for the appellate court to review'"  Board of Dirs., 258 B.R. at 583 (citing In re Prudential Lines, Inc., 170 B.R. 222, 243 (S.D.N.Y. 1994).

This concept has been extended to motions for damages under section 303(i) following an appeal of a dismissal order.  See In re Allen-Main Assocs., Ltd., 243 B.R. 606, 608-09 (Bankr. D. Conn. 1998) ("The issue involved in the appeal . . . is completely different from the request for a reasonable attorney's fee and costs.  [The petitioning creditor] has chosen not to move . . . for a stay of the dismissal order.  The dismissal order, accordingly, is in full force and effect and permits [the debtor] to assert its rights under § 303(i)."); see also Section 120 Land Group, Ltd. v. Collier, County, Fla. (In re Section 120 Land Group, Ltd.), 252 B.R. 812, 816-17 (Bankr. M.D. Fla. 2000) (retaining jurisdiction to consider a motion for fees and costs incurred in defending an improperly filed adversary proceeding despite a pending appeal of the dismissal order).  Here, Mr. Wilson did not obtain a stay pending appeal, and thus, this Court may decide the Non-Petitioning Creditors' request.

[4]    The Non-Petitioning Creditors have also argued for attorneys' fees and costs pursuant to Federal Rule of Bankruptcy Procedure 9011.  This request was set forth in a footnote and not in a separate motion as expressly required by Rule 9011(c)(1)(A).

6

Wilson has argued that neither the plain language of section 303(i) nor the corresponding legislative history, public policy, and case law grant standing to a non-debtor seeking attorneys' fees and costs.[5]

This matter is ripe for decision.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1).  Consideration of this matter constitutes a "core proceeding" under 28 U.S.C. §

---

Therefore, the request is not properly before the Court and will not be considered.

[5]     The Non-Petitioning Creditors have argued that this Court's ruling during the January 12, 2007 hearing dismissing the Case and annulling the automatic stay precluded Mr. Wilson from contesting the Court's authority to award attorneys' fees and costs.  More specifically, they argue that, because one aspect of the relief sought under their motions was the imposition of damages, Mr. Wilson was required to object at the January hearing.  Mr. Wilson failed to do so and thus, now may only object to the reasonableness of the requested attorneys' fees and costs.  The Court disagrees.  At the hearing, this Court observed:

> The movants have requested fees and expenses assessed against the petitioning creditor, and I will consider that request.  <u>I am not granting such request today</u>, but will consider that request following submission under certification of such fees and expenses of moving counsel . . . .  <u>If Mr. Wilson has a response, I will consider that response</u> . . . .

Hr'g Tr. 21:8-17.  The Court neither approved the Non-Petitioning Creditors' request for attorneys' fees and costs nor foreclosed Mr. Wilson from objecting to the imposition of such amounts.

7

157(b)(2)(A).

## **DISCUSSION**

In deciding whether the Non-Petitioning Creditors are entitled to their request of attorneys' fees and costs under section 303(i), the Court is called upon to determine to what extent section 303(i) permits an award of attorneys' fees and costs to non-debtors.  To do so, a close examination of section 303(i) is necessary.  It provides:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and <u>if the debtor does not waive the right to judgment under this subsection</u>, the court may grant judgment -
>
> (1)  <u>against the petitioners and in favor of the debtor</u> for -
>   (A)  costs; or
>   (B)  a reasonable attorney's fee; or
>
> (2)  <u>against any petitioner</u> that filed the petition in bad faith, for -
>   (A)  any damages proximately caused by such filing; or
>   (B)  punitive damages.

11 U.S.C. § 303(i) (emphasis added).

The plain language section 303(i)(1) is clear - only a debtor may recover attorneys' fees and costs under subsection (1).  As such, the Non-Petitioning Creditors are precluded from recovering under this subsection.

While it is clear that only a debtor may recover under subsection (1), the statute is ambiguous with regard to

8

subsection (2). The emphasized portions of section 303(i) lend support for two conflicting arguments, each of which have been argued by the parties in this Case. In support of their request, the Non-Petitioning Creditors argue that the omission of the words "and in favor of the debtor" from section 303(i)(2) and their inclusion in section 303(i)(1) provide the Court with the authority to award judgment under subsection (2) to non-debtors. In opposition, Mr. Wilson argues that the Non-Petitioning Creditors' interpretation would conflict with the introductory language of section 303(i), which provides that "the debtor" may waive the right to judgment. After a thorough examination of the section 303(i) and its corresponding legislative history, public policy, and applicable case law, the Court concludes that subsection (2) does not permit non-debtors to recover damages for a bad faith filing.

Although the case law addressing the question of a non-debtor's ability to recover damages under section 303(i)(2) is sparse, the few reported decisions considering this issue have foreclosed the non-debtors' requests. See Miles v. Okun (In re Miles), 430 F.3d 1083, 1093-94 (9th Cir. 2005); Franklin v. Four Media Co. (In re Mike Hammer Productions, Inc.), 294 B.R. 752, 754-55 (B.A.P. 9th Cir. 2003); see also In re Ed Jensen's Patio, Inc., 183 B.R. 643, 644 (Bankr. M.D. Fla. 1995). The Court finds the reasoning set forth in In re Miles particularly persuasive.

In _Miles_, the Court of Appeals for the Ninth Circuit denied a request for damages under section 303(i)(2) filed by an involuntary debtor's wife and children, citing to the legislative history of section 303(i)(2) and noting an important public policy.  430 F.3d at 1093-94.  According to the Court, the House and Senate Reports behind section 303(i)(2) "provide evidence that Congress intended only the debtor to recover damages resulting from an involuntary bankruptcy proceeding filed in bad faith . . . ."  _Id._  More specifically, the Reports provide, "[I]f a petitioning creditor filed the petition in bad faith, the court may award _the debtor_ any damages proximately caused by the filing of the petition. These damages may include such items as loss of business during and after the pendency of the case, and so on."  _Id._ at 1093-94 (quoting H.R. Rep. No. 95-595, at 324 (1977), _as reprinted in_ 1978 U.S.C.C.A.N. 5963, 6280 (emphasis added); _accord_ S. Rep. No. 95-989, at 34 (1978), _as reprinted in_ 1978 U.S.C.C.A.N. 5787, 5820).

In further support, the court in _Miles_ argued that allowing a non-debtor to recover damages under section 303(i)(2) "could invite abuse of the system":

> The introductory clause to § 303(i) provides that "the debtor" may waive the right to judgment, which would then enable the debtor to waive the third parties' damages.  If such were the case, "debtors could extort payments from either the petitioning creditors or the non-debtors seeking damages, in exchange for either waiving or not waiving the damages

> claims." . . . . The possible abuse of the
> involuntary bankruptcy process that could
> result makes it unlikely that Congress
> intended to permit third parties to seek
> damages under § 303(i)(2), as it took great
> care to build into the Code provisions that
> would prevent abuse of the process.

Id. at 1094 (internal citations omitted).

Although the court in Miles expressly reserved ruling on the issue of whether non-petitioning creditors, as opposed to non-debtor third parties, could recover under section 303(i)(2), id. at 1094 n.7, this Court adopts and extends the reasoning in Miles to the instant case, precluding the Non-Petitioning Creditors from recovering damages.

As a final argument, the Non-Petitioning Creditors urge this Court to award attorneys' fees and costs pursuant to section 105(a), which permits the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code]." 11 U.S.C. § 105(a). Section 105(a) bestows broad equitable powers on the Court. See, e.g., In re Combustion Engineering, Inc., 391 F.3d 190, 236 (3d Cir. 2004) ("[Section 105(a)] has been construed to give a bankruptcy court 'broad authority' to provide equitable relief appropriate to assure the orderly conduct of reorganization proceedings."). However, in light of the prohibition under section 303(i), the Court is reluctant to grant the Non-Petitioning Creditors' request to achieve a result otherwise inconsistent with the

Code's statutory scheme.

## CONCLUSION

Although the Court is sympathetic to the position of the Non-Petitioning Creditors, particularly in light of the dismissal of the involuntary petition on grounds of bad faith, this Court must nevertheless deny the Non-Petitioning Creditors' request for attorneys' fees and costs for the reasons stated above. In so ruling, this Court makes no determination regarding whether and to what extent the Non-Petitioning Creditors may seek fees and costs from the Massachusetts Housing Court.

An appropriate Order follows.

BY THE COURT:

Dated: Wilmington, Delaware
      February 22, 2007    Brendan Linehan Shannon
                                     United States Bankruptcy Judge